UNITED STATES v. ONE CADILLAC EIGHT AUTOMOBILE.

(District Court, M. D. Tennessee. December 24, 1918.)

No. 1234.

1. INTOXICATING LIQUORS ⬅247—TRANSPORTATION OF INTOXICANTS—FOR-
   FEITURE OF VEHICLE USED—GROUNDS.
   An automobile used to transport liquor into a state the laws of which prohibit its sale, in violation of Act March 3, 1917, § 5 (Comp. St. 1918, §§ 8739a, 10387a–10387c), is not subject to seizure and forfeiture by virtue of Act March 2, 1917, § 1, which is a proviso contained in the Indian Appropriation Act, and applies only to introduction of liquor into Indian country "or where the introduction is prohibited by treaty or federal statute" relating to Indian affairs.

2. FORFEITURES ⬅2—CONSTRUCTION OF STATUTES.
   A statute imposing a forfeiture should be strictly construed and in a manner as favorable to the person whose property is to be seized as is consistent with the fair principles of interpretation.

3. STATUTES ⬪228—CONSTRUCTION—SCOPE OF PROVISO.
    The effect of a proviso is presumptively limited to the particular legis-
    lation to which it is appended, and it should not be construed as having
    a more general application unless such legislative intention is clearly
    and positively expressed in language admitting of no other reasonable in-
    terpretation.

Forfeiture. Libel by United States for forfeiture of Cadillac Eight
Automobile, alleged to have been used in transporting intoxicating liq-
uor from Kentucky into Tennessee. Answer by claimant, W. B. Win-
ter, incorporating defense in the nature of demurrer to the libel. De-
cree for claimant.

Lee Douglas, U. S. Atty., of Nashville, Tenn.
Frank P. Bond, of Nashville, Tenn., for defendant.

SANFORD, District Judge. [1] The answer of the claimant in ef-
fect incorporates a demurrer to the libel. This has been argued by
counsel, with the understanding that technical questions of pleading are
waived, and that the question submitted for determination is whether,
on the face of the libel, a case is made out for the forfeiture of the au-
tomobile in question.

The libel alleges that the automobile was used in transporting in-
toxicating liquor from Kentucky into Tennessee in violation of sec-
tion 5 of the Act of March 3, 1917, c. 162, 39 Stat. 1058, 1069 (Comp.
St. 1918, §§ 8739a, 10387a–10387c) commonly known as the Reed
Amendment.

The specific punishment provided for violation of this Act is fine
or imprisonment, or both. Admittedly it does not authorize the for-
feiture of the automobile unless by virtue of a proviso contained in
the earlier Act of March 2, 1917, c. 146, 39 Stat. 969, 970, making
an appropriation for the expenses of the Bureau of Indian Affairs,
etc.

This proviso appears in a separate paragraph, reading as follows:

"For the suppression of the traffic in intoxicating liquors among Indians,
$150,000: Provided, that automobiles or any other vehicles or conveyances
used in introducing, or attempting to introduce, intoxicants into the Indian
country, or where the introduction is prohibited by treaty or Federal statute,
whether used by the owner thereof or other person, shall be subject to the
seizure, libel, and forfeiture provided in section twenty-one hundred and forty
of the Revised Statutes of the United States."

Section 2139 of the Revised Statutes makes it a criminal offense to
introduce or attempt to introduce "any spirituous liquor or wine into
the Indian Country," but that it shall be a sufficient defense that
the acts charged were done by order or under the authority of the War
Department.

Section 2140 of the Revised Statutes (Comp. St. 1918, § 4141),
which is referred to in the Act of March 2, 1917, is contained in title
28, "Indians," and chapter 4, "Government of Indian Country," and
reads as follows:

"If any superintendent of Indian affairs, Indian agent, or subagent, or
commanding officer of a military post, has reason to suspect or is informed

that any white person or Indian is about to introduce or has introduced any spirituous liquor or wine into the Indian Country in violation of law, such superintendent, agent, subagent, or commanding officer, may cause the boats, stores, packages, wagons, sleds, and places of deposit of such person to be searched; and if any such liquor is found therein, the same, together with the boats, teams, wagons, and sleds used in conveying the same, * * * shall be seized and delivered to the proper officer, and shall be proceeded against by libel in the proper court, and. forfeited, one half to the informer and the other half to the use of the United States."

After careful consideration of the arguments and briefs of counsel, I conclude that the phrase in the Act of March 2, 1917, on which the Government relies, "or where the introduction is prohibited by treaty or Federal statute," does not authorize the forfeiture of the automobile in question because its use in introducing intoxicating liquor into the State of Tennessee in violation of the Reed Amendment, as alleged.

[2] A statute imposing a forfeiture should be strictly construed and in a manner as favorable to the person whose property is to be seized as is consistent with the fair principles of interpretation. 19 Cyc. 1358, and cases cited in note 14.

[3] The effect of a proviso is furthermore presumptively limited to the particular legislation to which it is appended, and should not be construed as having a more general application unless such legislative intention is clearly and positively expressed in language admitting of no other reasonable interpretation. Minis v. United States, 15 Pet. 423, 445, 10 L. Ed. 791. It is hence not to be construed as having a general application when its language is perfectly satisfied by confining its operation to the particular legislation to which it is appended, especially when there is no other general legislation then in force to which it can relate. 15 Pet. 446, 447, 10 L. Ed. 791. As all other provisions of the Act of March 3, 1917, in which this proviso is contained relate exclusively to Indian affairs, and the particular clause to which it is appended relates to the suppression of traffic in intoxicating liquors among Indians, it is therefore presumptively limited to the introduction of intoxicating liquor among the Indians, and should certainly not be extended beyond the treaties and statutes relating to Indian affairs unless the language admits of no other reasonable interpretation and is not perfectly satisfied when applied to such treaties and statutes.

At the time this Act was passed there were in force various treaties with Indian Tribes and Federal statutes ratifying the same, by which certain tracts of land had been ceded to the United States by the Indians and therefore had ceased to be "Indian Country," but in which, pursuant to the treaty stipulation and statutes, the laws of the United States prohibiting the introduction of intoxicating liquor into the "Indian Country" nevertheless remained in force. Treaty with Nez Perce Indians, May 1, 1893, art. 9, ratified by the Act of Aug. 15, 1894, c. 290, 28 Stat. 286, 330; Treaty with Choctaw and Chickasaw Indians, March 21, 1903, ratified by the Act of July 1, 1902, c. 1362, 32 Stat. 641, 651; also various Treaties with the Choctaws, Seminoles, Creeks and other Indian Tribes and ratifying Acts, collated in Ex parte Webb, 225

U. S. 663, 684, 685, 32 Sup. Ct. 769, 56 L. Ed. 1248. The Act of March 1, 1895, c. 145, 28 Stat. 693, prohibiting the introduction of intoxicating liquor into the "Indian Territory," including those portions which, though largely inhabited by Indians, were no longer "Indian country," also then remained in force after the incorporation of the Indian Territory into the State of Oklahoma, so far as it prohibited the introduction of intoxicating liquors from without the new State into that part of it which had formerly been the "Indian Territory," although not remaining "Indian country," under the well established authority of the Federal Government to regulate liquor traffic with the Indians, even after Statehood. Ex parte Webb, 225 U. S., supra; Joplin Mercantile Co. v. U. S., 236 U. S. 531, 537, 35 Sup. Ct. 291, 59 L. Ed. 705.

As the lands which had been ceded by the Indians under the foregoing treaties and a part at least of the former Indian Territory was no longer Indian country, it is obvious that the preceding phrase in the proviso of the Act of March 2, 1917, relating to vehicles used in introducing intoxicants "into the Indian country" would not have been applicable to these places, and that in order to make the proviso applicable to such places it was necessary to add the subsequent phrase now in question, "or where the introduction is prohibited by treaty or Federal statute," or its equivalent. The meaning of this subsequent phrase is, however, clearly satisfied when it is applied to the places in which the introduction of intoxicating liquor was still prohibited by these Indian treaties and ratifying acts and by the Act of 1895 prohibiting the introduction of intoxicating liquor into the Indian Territory. This meaning of the phrase is entirely germane to Indian affairs, the general subject matter of the Act of March 2, 1917, and also to the particular clause to which the proviso is attached relating to the suppression of traffic in intoxicating liquors among Indians, and gives to this phrase a meaning entirely consistent with the general plan of legislation of the United States in dealing with Indian affairs. The meaning of this phrase being thus clearly satisfied by its application to these Indian treaties and statutes in reference to Indian affairs, it would, in my opinion, be contrary to the fundamental rule of construction stated in Minis v. United States, 15 Pet. 423, 10 L. Ed. 791, supra, to extend its meaning so as to include general legislation having no reference whatever to Indian affairs or to the suppression of the traffic in intoxicating liquor among the Indians, even if there appeared to have been then in force any other general treaties or Federal statutes prohibiting the introduction of intoxicating liquor to which this proviso could in any event have been applicable: No such general treaty appears however to have been then in existence; and no general Federal statute other than the Webb-Kenyon Act of March 1, 1913, c. 90, 37 Stat. 699 (Comp. St. § 8739), which prohibited the transportation, through interstate or foreign commerce of intoxicating liquor into any State, Territory or District, for use in violation of the law thereof; but did not prohibit such introduction for lawful local use.

The Act of March 2, 1917, furthermore specifically provides that the vehicles used in the introduction of intoxicating liquor "shall be subject to the seizure, libel and forfeiture provided in section twenty-one

forty of the Revised Statutes of the United States." Section 2140, however, provided for search for liquor by any superintendent of Indian affairs, Indian agent, sub-agent, or commanding officer of a military post, and that if such liquor should be found it should be seized and delivered to the proper officer, proceeded against by libel, and forfeited. In United States v. Steamboat Cora, 1 Dak. 1, 46 N. W. 503, it was held by the United States Territorial District Court, construing the Act of March 15, 1864, c. 33, 13 Stat. 29, from which this section is derived, that to maintain a libel of forfeiture thereunder the seizure must be made by one of the designated officers or agents therein specified in order to constitute a legal seizure, and that a seizure made by the Marshal under writ of the court based upon the Government's libel, did not confer jurisdiction. The effect of this holding, which appears to me to be based upon a sound interpretation of the statute, is twofold: First, as the seizure and forfeiture to be made under the Act of March 2, 1917, is that provided for by R. S. 2140, and as such forfeiture can only follow a search and seizure made by certain designated officers or agents, most of whom are stationed in Indian country or closely contiguous thereto, and not generally throughout the United States, this strengthens the conclusion that it was not intended by the proviso in the Act of March 2, 1917, that it should apply generally throughout the United States or otherwise than in treaties and statutes relating to Indian affairs; and, second, as the seizure in the instant case is not alleged to have been made by any of these designated officers or agents (but as shown by the process was made by the Marshall under writ of monition and arrest based upon the libel itself) if follows that for want of showing of a legal seizure, this court has acquired no jurisdiction of the automobile thus seized.

I find nothing inconsistent with this conclusion in United States v. One Buick Roadster (D. C.) 244 Fed. 961, 963, 964, which merely held that the Act of March 2, 1917, authorized the forfeiture of an automobile used in introducing liquor into that portion of Oklahoma which was formerly the "Indian Territory" although not "Indian Country," which remained prohibited even after statehood under the Act of March 1, 1895, and was sustainable under the power of Congress in the regulation of Indian affairs; a conclusion in which I entirely concur, the construction of the proviso so as to include such cases being entirely germane to the other provisions of the Act and well within the presumptive meaning of the proviso.

I pass without determination the suggestion of counsel for the claimant that in any event the Reed Amendment is not to be deemed a Federal statute prohibiting the introduction of liquor into Tennessee within the meaning of the Act of March 2, 1917, since such prohibition arises not merely from the Federal statute but also from State legislation; as well as the question suggested in my mind in considering this case, whether in any event the Reed Amendment can be properly considered as a Federal statute prohibiting the introduction of intoxicating liquor into Tennessee or other places within the meaning of the Act of March 2, 1917, since it does not absolutely prohibit the

introduction of liquor into such places, but merely prohibits such introduction otherwise than for four specified purposes.

For the reasons stated, a decree will be entered adjudging the libel to be insufficient in law and dismissing the same.